UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES PATTERSON          :
                         :
     v.                  :    C.A. No. 10-136ML
                         :
THE STATE OF RHODE       :
ISLAND, et al.           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court for a report and recommendation (28 U.S.C. §§ 636(b)(1)(B); LR Cv 72) is Defendant Joseph Ippolito's Motion to Dismiss. (Document No. 26). Plaintiff opposes the Motion. (Document No. 31). A hearing was held on January 10, 2011. For the reasons discussed herein, I recommend that the District Court GRANT in part and DENY in part Defendant Ippolito's Motion to Dismiss.

**Facts**

The following facts are primarily gleaned from Plaintiff's First Amended Complaint. (Document No. 16). Plaintiff was formerly employed as a Data Entry Clerk with the State of Rhode Island District Court, Sixth Division. Plaintiff was employed in a position covered by a collective bargaining agreement between the State and a local union affiliated with the Laborers' International Union of North America ("LIUNA"), and, at all relevant times, held the "office" of union steward.

The moving Defendant, District Court "Magistrate Joseph Ippolito, Assistant District Court Administrator is sued in his individual capacity and he acted as Assistant Administrator for the District Court of the State of Rhode Island, at all times mentioned herein." (Document No. 16 at Parties, ¶ 5).

On or about September 10, 2007, Plaintiff was arrested at work by the Rhode Island State Police and charged with a felony, Obstruction of the Judicial System (R.I. Gen. Laws § 11-32-3), and a misdemeanor, Vandalism (R.I. Gen. Laws § 11-44-1).  See State v. James Patterson, P2-2008-1210A.  After trial in February 2009, a Superior Court jury found Plaintiff not guilty of those criminal charges.  The criminal charges were based on an allegation that Plaintiff improperly discarded legal documents received by the District Court Clerk's Office for filing.  Plaintiff's employment with the District Court as a Data Entry Clerk was also terminated based on this allegation.[1]

Because Plaintiff's First Amended Complaint is poorly organized and confusing, it is difficult to isolate the particular legal claims made against Defendant Ippolito.  Plaintiff alleges a deprivation of his civil rights under color of state law pursuant to 42 U.S.C. § 1983[2] and asserts supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over several state law claims including false arrest, abuse of process, malicious prosecution, illegal detention, interference with contract, bad faith, interference with employment and assault and battery.  The heart of Plaintiff's claim appears to be that Defendant Ippolito and others engaged in a "conspiratorial plan" in retaliation for Plaintiff's "sincere efforts" as union steward.  The object of the alleged conspiracy was to remove him from his position as a union steward and thereby prevent him from pursuing further grievances

---

[1] Plaintiff's union grieved the termination of his employment and, on June 30, 2010, an arbitrator concluded that the State did not have "just cause" for termination and ordered Plaintiff reinstated to employment with back pay and benefits.  The State subsequently filed an action in Superior Court to vacate the arbitrator's award.  See State of R.I. v. R.I. Laborers' District Council, Local 808, C.A. No. PM-2010-4473 (R.I. Super.).  On February 3, 2011, the Superior Court concluded that the arbitrator "effectively exceeded his authority in that he reached an irrational result" and vacated the arbitrator's award reinstating Plaintiff to employment.  Id.

[2] Plaintiff also alleged a violation of 42 U.S.C. § 1981 (interference with contract) and 42 U.S.C. § 1985 (conspiracy to interfere with civil rights).  However, at the hearing, his attorney conceded the failure to state a viable legal claim under either of these federal statutes and thus I recommend dismissal of those claims.

on behalf of the local union members which were an "obstacle" to Defendants' actions in violation of the union contract. In the instant Motion, Defendant Ippolito argues that Plaintiff fails to state a viable federal claim against him under 42 U.S.C. § 1983 and that the Court should decline to exercise discretionary supplemental jurisdiction over Plaintiff's remaining state law claims.

**Discussion**

**A.     Dismissal Standard**

Defendant Ippolito moves for dismissal of Plaintiff's Complaint under Rule 12(b)(6), Fed. R. Civ. P. Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 ("when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the

merits," but instead,"the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, Nos. 08-2283, 09-1801, 2010 WL 5093220, *4 (1st Cir. Dec. 10, 2010).

### B. Under Color of State Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). An individual acts under color of state law within the meaning of § 1983 when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941). "Actions by an official in his/her official capacity are under color of law even if they are not in furtherance of state policy and even if they violate state law." Grimm v. Borough of Norristown, 226 F. Supp. 2d 606, 635 (E.D. Pa. 2002) (citing Monroe v. Pape, 365 U.S. 167 (1961)). See also Zambrana-Marrero v. Suarez-Cruz, 999 F. Supp. 678, 682 (D.P.R. 1998).

Defendant Ippolito contends that he was not acting "under color of state law" and thus cannot be held liable under 42 U.S.C. § 1983. (Document No. 26-1 at p. 26). Although he concedes that Plaintiff accuses him of unlawful conduct while "undertaking his duties as a manager of the clerk's office," Defendant Ippolito argues that he held "no special status as a result of any authority imbued on him by the state undertaking these activities." (Document No. 26-1 at p. 27). He reasons that he was not acting "under color of state law" because anyone can report a suspected crime to police, any office manager can review a subordinate's work and the documents he throws out or has on his desk, any co-worker could review documents left in the open on a desktop, and anyone can review

public case files (R.I. Gen. Laws § 38-2-3) to determine if documents have actually been filed in a case. Id.

Defendant Ippolito cites to a single case, Polk County v. Dodson, 454 U.S. 312 (1981), in support of this argument. In Polk, the Supreme Court held that a public defender employed by a county and appointed to represent an indigent criminal defendant is not a state actor for purposes of § 1983. It reasoned that, although the public defender was a full-time Government employee, he was not acting "under color of state law" because, except for source of payment, the lawyer-client relationship was no different than one with a privately retained lawyer and was essentially a "private function." Id. at 319. Polk is distinguishable and does not support Defendant Ippolito's argument. Here, Plaintiff's First Amended Complaint plainly alleges that Defendant Ippolito "acted as Assistant Administrator for the District Court of the State of Rhode Island, at all times mentioned herein." (Document No. 16 at p. 4). Further, it outlines an alleged course of conduct undertaken by Defendant Ippolito and others in connection with their duties as court administrators. See R.I. Gen. Laws § 8-8-8.1. While the private conduct of a public employee is not actionable under § 1983, conduct "in the course of performing an actual or apparent duty of his office," or conduct which the state actor could not have engaged in "but for the authority of his office," is taken "under color of state law" within the meaning of § 1983. Forbes v. R.I. Bhd. of Corr. Officers, 923 F. Supp. 315, 321 (D.R.I. 1996). At this pleading stage, Plaintiff has sufficiently alleged that Defendant Ippolito was acting under color of state law in connection with the actions challenged by Plaintiff.

**C.    Alleged Constitutional Violations**

Plaintiff alleges that the individually named Defendants, including Defendant Ippolito, "sought to deprive Plaintiff of his right to freedom of speech, freedom of the press, his right to

freedom from illegal searches and seizures, his right to equal protection under the law, and of his right to be free from unlawful arrest, detention, imprisonment, and/or cruel and unusual punishment in violation of the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and as Title 42 U.S.C. § 1983 secures redress of those constitutional violations to the Plaintiff." (Document No. 16 at p. 27). Defendant Ippolito argues, for several reasons (see Document No. 26-1 at pp. 15-26), that Plaintiff fails to state a viable claim of any constitutional violation against him. Secondarily, Defendant Ippolito contends that, even if Plaintiff properly alleged deprivation of a constitutional right, he is entitled to qualified immunity due to his status as a government official. Unfortunately, in his Opposition, Plaintiff misconstrues Defendant Ippolito's argument as one resting exclusively on qualified immunity grounds and fails to directly address his other substantive arguments for dismissal. (See Document No. 31 at p. 3). Plaintiff incorrectly asserts that "Defendant does not contest the sufficiency of any of the substantive constitutional claims alleged by Plaintiff under his 42 U.S.C. § 1983 offering." Id. at p. 6.

After this deficiency was pointed out in Defendant Ippolito's Reply Brief (Document No. 33), Plaintiff filed a sur-reply brief which was returned by the Court because such briefs may not be filed without prior leave of the Court pursuant to Local Rule Cv 7(b)(3). (Document Nos. 34 and 35). Plaintiff then filed a motion for leave to file a sur-reply brief which was denied for failure to show the existence of circumstances warranting a sur-reply brief. (See Document No. 36 and January 7, 2011 Text Order). In particular, Defendant Ippolito's Reply was proper under Local Rule Cv 7(b)(2) since it did not raise new issues, and Plaintiff offered no explanation as to why his original Opposition was insufficient. I will examine Plaintiff's alleged constitutional violations based on the existing record, including the arguments made at the January 10, 2011 hearing.

**1. First Amendment**

Because Plaintiff's Amended Complaint is so poorly organized, it is difficult to parse out his First Amendment claim. However, I am required to construe the Amended Complaint in the light most favorable to Plaintiff. Doing so, it appears that Plaintiff attempts to plead a First Amendment retaliation claim against Defendant Ippolito and the other individual Defendants. Plaintiff claims that, in his capacity as a union steward, he "attempted to correct the Defendants continued and observed violations of the LIUNA Collective Bargaining Agreement" and that "[i]n retaliation for [his] sincere efforts..., [Defendants undertook] a conspiratorial plan to remove him permanently from his position as Union Steward and thereupon preventing him from making further grievances on behalf of the Union Membership." (Document No. 16 at pp. 6-7). Plaintiff also asserts that such conduct was an "attempt to obstruct his activities of First Amendment free speech in support of his fellow union members under the LIUNA Collective Bargaining Agreement." Id. at pp. 17-18. In his Memorandum in Opposition to the pending Motion to Dismiss, Plaintiff asserts that Defendant Ippolito and the other individual Defendants acted "in furtherance of punishing [him] for the exercise of his First Amendment conduct in exposing what [he] believed were violations of the Collective Bargaining Agreement between LIUNA and the State." (Document No. 31 at p. 6).

"A government employee does not surrender all of her First Amendment rights at her employer's doorstep." Davignon v. Hodgson, 524 F.3d 91, 100 (1st Cir. 2008) (citing Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)). "To prevail on a § 1983 retaliation claim, a public-employee plaintiff must establish: (1) that he spoke as a citizen on a matter of public concern; (2) that his interest in commenting upon these matters outweighed defendant's interest in the efficient performance of its public services; and (3) that the 'protected speech' was a substantial or

motivating factor in the defendant's adverse employment action." Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 145 (D. Mass. 2009) (citing Lewis v. City of Boston, 321 F.3d 207, 218-219 (1st Cir. 2003)). Although the first two elements are questions of law for the Court, Lewis, 321 F.3d at 219, the analysis is "highly fact-specific." Farhat v. Jopke, 370 F.3d 580, 590 (6th Cir. 2004). "The depth of the court's inquiry depends on how clearly the content of the speech in question relates to a matter of public concern." Bergeron v. Cabral, 535 F. Supp. 2d 204, 211 (D. Mass. 2008) (emphasis added). In other words, the determination focuses on the "content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-148 (1983). "Matters of inherent concern to the public include official malfeasance, abuse of office, and neglect of duties." Bergeron, 535 F. Supp. 2d at 211 (citing Curran v. Cousins, 509 F.3d 36, 46 (1st Cir. 2007)).

Here, Plaintiff does not specifically identify the content or context of his allegedly protected speech. Plaintiff generally claims that, as union steward, he advocated that District Court employees "were being forced to undertake duties that were either in violation of the LIUNA Collective Bargaining Agreement by assignment of duties to certain clerks who were not properly trained for their position, or, that assigned particular clerks to undertake duties that a higher 'pay-grade' union member should have been engaging in." (Document No. 16 at p. 9). He also claims he complained about "abuses" committed by Defendant Ippolito and the other individual Defendants in violation of the union contract. Id. at p. 10.

It is clear that Plaintiff alleges that he was retaliated against because of his activities/speech as a union steward.[3] In Davignon v. Hodgson, 524 F.3d at 101-102, the First Circuit held that although speech related to union matters is not automatically deemed to be of "inherent public concern," it does point in that direction. See also Richter v. Village of Oak Brook, No. 01 C 3842, 2003 WL 22169763 at *14 (N.D. Ill. Sept. 19, 2003) (holding that "the court is unwilling to conclude that a public employee loses the protection of the First Amendment when he is acting on behalf of a union" and recognizing the presence of precedent in which "the parties appeared to assume that speech in a public employee's role as union steward is protected speech"). While Plaintiff's Amended Complaint contains fairly general allegations as to his protected speech, his allegation that he grieved the assignment of duties to improperly trained clerks suffices as a matter of public concern at this pleading stage. He also sufficiently alleges the other elements of a First Amendment retaliation claim, and Defendant Ippolito has not shown, at this stage of the case, that Plaintiff's Amended Complaint fails to state a First Amendment claim upon which relief could be granted. Thus, I recommend that the Court DENY the Motion to Dismiss as it pertains to such a claim.

### 2. Fourth Amendment

Although Plaintiff generally alleges a violation of "his rights to be free from unreasonable search and seizures," (Document No. 16 at p. 28), it is difficult to ascertain the exact parameters of his Fourth Amendment claim against Defendant Ippolito. First, as to seizure, Plaintiff alleges false

---

[3] In response to Plaintiff's original Complaint, the State of Rhode Island suggested the presence of jurisdictional defenses such as the "exhaustion of alternative remedies" under the union contract and the presence of "exclusive jurisdiction of the Rhode Island State Labor Relations Board over labor disputes and unfair labor practice charges." (Document No. 7 at p. 4, n.4). However, since these defenses went beyond the face of Plaintiff's Complaint, the State suggested they must wait to posit them in a summary judgment motion. Id. Defendant Ippolito has not raised any of these defenses at this point.

arrest/unlawful detention and asserts that he was "unceremoniously arrested while at his desk by members of the Rhode Island State Police, identified herein as John Doe 1 and John Doe 2." Id. at pp. 5-6. In particular, he claims that "[t]he circumstances attending his arrest and unlawful detainment and unnecessary and offensive handling and touching by members of the Rhode Island State Police...did and does constitute an assault and battery...and caused...the public humiliation of being manhandled by Rhode Island State Police Officers and openly treated as a dangerous criminal." Id. at pp. 15-16. While Plaintiff's Amended Complaint alleges the existence of a general conspiracy to remove him from his position as a union steward and alleges that Defendant Ippolito was present when he was arrested, he does not allege that Defendant Ippolito had any personal involvement in his arrest or any authority to effectuate his arrest. Plaintiff clearly states that he was arrested by two unidentified members of the Rhode Island State Police. Defendant Ippolito argues that since Plaintiff was arrested pursuant to a warrant issued by a neutral judicial officer, he has no false arrest claim under Section 1983 as a matter of law because there has previously been a judicial determination as to the existence of probable cause. However, I do not need to reach that legal issue for purposes of this Motion since Plaintiff fails to allege factually that Defendant Ippolito had any personal involvement in his arrest or legal authority to effectuate his arrest. Thus, Plaintiff fails to state a Fourth Amendment claim for unlawful arrest against Defendant Ippolito.

On the other hand, as to search, Plaintiff alleges that Defendant Ippolito and the other individual Defendants subjected him to unlawful actions including "surreptitiously videotaping [him] at his employment, nefariously searching through his desk, his private papers and rummaging through his re-cycle and trash bins on a daily basis." (Document No. 16 at p. 9). Defendant Ippolito argues that Plaintiff had "no reasonable expectation of privacy" in the materials "collected" and that

he is improperly "attempting to claim a privacy interest in papers that were located on top of his work desk, in his recycle bin and trash bin." (Document No. 26-1 at p. 21). Thus, he contends that Plaintiff fails to state a viable unlawful search claim under the Fourth Amendment.

Plaintiff's Amended Complaint does not limit his unlawful search claim to items located on the top of his desk or in his trash/recycle bins as asserted by Defendant Ippolito. As noted above, Plaintiff specifically alleges that Defendant Ippolito and the other individual Defendants "nefariously searched <u>through his desk</u>" and "his <u>private papers</u>." (Document No. 16 at p. 9) (emphasis added). In <u>O'Connor v. Ortega</u>, 480 U.S. 709, 715 (1987), the Supreme Court held that searches by government employers or supervisors of the private property of their employees are subject to Fourth Amendment restraints and that "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." <u>Id.</u> at 717. As to the boundary of such rights, the Court adopted a "reasonable expectation of privacy" analysis which it acknowledged was highly fact driven and "must be addressed on a case-by-case basis" considering "societal expectations." <u>Id.</u> at 717-718. While it is unlikely, absent some highly unusual circumstances, that Plaintiff can claim a reasonable expectation of privacy in his discarded trash or recycling, his allegations as to an unlawful search "through his desk" and of "his private papers" are enough at this pleading stage to state a Fourth Amendment violation. There is not a sufficient factual record at this early stage to assess the scope and reasonableness of Plaintiff's claimed privacy expectations.

    **3.**     **Eighth Amendment**

Plaintiff alleges that "[d]uring his detainment, [he] informed State Police officers...that he had an implanted insulin pump device due to his medical condition and that no additional care or

concern was provided to assure [his] comfort and health status." (Document No. 16 at p. 20). Plaintiff also claims that the "failure to have provided necessary medical care or attention" resulted in "anxiety and fear relative to his condition which resulted in unnecessary pain and suffering." Id. It appears that Plaintiff is attempting to state a "deliberate indifference" claim under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97 (1976). However, as with his Fourth Amendment false arrest claim, Plaintiff has simply not stated any viable claim against Defendant Ippolito under the Eighth Amendment. Plaintiff does not allege any personal involvement by Defendant Ippolito in either his arrest or subsequent "detainment." Thus, Plaintiff has not alleged any facts which would support a deliberate indifference claim against Defendant Ippolito.

      **4.      Fourteenth Amendment**

In his Amended Complaint, Plaintiff alleges generally that Defendants' actions violated his rights to due process and equal protection of the law. (Document No. 16 at pp. 15, 28). However, he never plainly articulates the substance of such claims as to Defendant Ippolito or any of the other Defendants in either his Amended Complaint or Memorandum in Opposition to the instant Motion. Under Rule 8, Plaintiff is obligated to include a "short and plain" statement of his claim in the complaint and to plead his allegations in a "simple, concise, and direct" fashion. Fed. R. Civ. P. 8(a)(2), (d)(1). The Amended Complaint contains four counts which appear to be brought against all Defendants and each Count contains a confusing mixture of state and federal claims. In addition, there is some overlap, as certain legal claims are listed in the descriptions of more than one count. In addition, in his Memorandum, Plaintiff never clearly states and summarizes the particular legal claims brought against this moving defendant – Defendant Ippolito.

Plaintiff's disorganized pleadings leave the Court grasping as to what claims he is trying to plead and as to which Defendants. For instance, Plaintiff alleges in Count III that he was "denied due process of law and equal protection of the law when terminated from his employment and contracted to benefits based upon a purely subjective and ambiguous [Paperwork Reduction] Order, which subterfuge allowed the individually named Defendants, (Ippolito, Pagliarini and Alfonso), to direct their personal animus against him while alleging Plaintiff grievously violated some prestigious standing Order or guideline during his employment." (Document No. 16 at p. 15). When stripped of the rhetoric, Plaintiff makes a purely conclusory allegation that his termination resulted in a due process/equal protection violation without any substantive explanation of his claim. His pleading as to his Fourteenth Amendment claims is simply not sufficient even at the pleading stage. See Pike v. Guarino, 492 F.3d 61, 79 n.9 (1st Cir. 2007) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); Wilson v. Moreau, 440 F. Supp. 2d 81, 97 (D.R.I. 2006) ("It is not the responsibility of this Court to try to guess at what [a plaintiff's] equal protection claim might be."); and United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.").

For instance, the First Circuit has held that "a sufficient procedural due process claim" must allege deprivation of a property interest without adequate process and also that available state law remedies are inadequate to address the deprivation. See Ramirez v. Arlequin, 447 F.3d 19, 25 (1st Cir. 2006) (affirming dismissal of procedural due process claims where plaintiffs failed to allege that there was no complete and adequate remedy under state law); and Rumford Pharmacy, Inc. v. City

of East Providence, 970 F.2d 996, 999 (1st Cir. 1992) (citing Zinermon v. Burch, 494 U.S. 113, 125-126 (1990)) (describing as "critically important" the inclusion of an allegation in the complaint that state law remedies are inadequate to redress the challenged deprivation). Here, Plaintiff alleges that he was arrested on September 10, 2007. (Document No. 16 at p. 23). "[Plaintiff] was terminated from his employment with the State after a hearing on October 3, 2007." State of R.I. v. R.I. Laborers' District Council, Local 808, C.A. No. PM-2010-4473, Decision of February 3, 2011 at p. 2 (R.I. Super.). Plaintiff grieved the termination under the terms of his union contract and the issue of just cause for termination was submitted to arbitration. On June 30, 2010, the arbitrator issued his ruling which was subsequently vacated by a Superior Court judge on February 3, 2011. See supra at p. 2, n.1. Thus, even if Plaintiff had adequately pled a procedural due process claim, it appears that Plaintiff had access to an adequate state law remedy through the grievance process afforded under his union contract. See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002) ("[T]he full arbitration hearing afforded by the collective-bargaining agreement was more than sufficient to satisfy the requirement for a post-deprivation hearing."); O'Neil v. Baker, 210 F.3d 41, 50 (1st Cir. 2002) (holding that arbitration of public employee's termination grievance satisfies the requirements of due process); and Esposito v. Town of N. Providence, C.A. No. 04-302S, 2006 WL 2711736 at *11 (D.R.I. Sept. 21, 2006) (holding that filing a grievance under a union contract and taking the matter to arbitration is an adequate remedy under Rhode Island state law).

While the Court would ordinarily dismiss claims under such circumstances with leave to amend, this is already Plaintiff's second bite at the apple. In response to Plaintiff's original Complaint, all Defendants responded with Motions to Dismiss. (Document Nos. 7 and 8). Plaintiff

opposed the Motions but also sought leave to amend his Complaint. (Document Nos. 13 and 14). Consistent with the liberal amendment policy embodied in Rule 15, Fed. R. Civ. P., the Motions to Dismiss were denied without prejudice, and Plaintiff was granted leave to amend and given thirty days to file an amended complaint. Unfortunately, Plaintiff did not address many of the issues pointed out by the Court at the hearing in preparing and filing his Amended Complaint. This case recently passed its first year pending in this Court, and Plaintiff still has not in either his Amended Complaint or legal Memorandum, clearly and plainly articulated many of his legal claims. Thus, the Court has no confidence that additional opportunities would bear fruit. Accordingly, I recommend that Plaintiff's Fourteenth Amendment claims be dismissed with prejudice for failure to state a claim and without leave to amend.

### D. Qualified Immunity

Defendant Ippolito contends that he is entitled to the protection of qualified immunity because he "reasonably acted under a belief that he was acting legally." (Document No. 26-1 at p. 29). Qualified immunity is an affirmative defense that protects government officials performing discretionary functions from civil liability unless they knew or should have known that their conduct violated the constitution. See Wilson v. Layne, 526 U.S. 603, 609 (1999); and Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). "To determine whether a particular [governmental employee] is entitled to qualified immunity, a court must decide: (1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." Estrada v. Rhode Island, 594 F.3d 56, 62-63 (1st Cir. 2010) (citation omitted). The second prong considers: (1) the clarity of the law at the time; and (2) whether, on the facts of the case, a reasonable defendant would have understood that his conduct

violated the plaintiff's civil rights. Id. at 62-63. This final aspect of the test, although "a legal determination, is highly fact specific." Id. (quoting Nelson v. Kline, 242 F.3d 33, 35 n.2 (1st Cir. 2001)).

Rather than apply the qualified immunity analysis to Plaintiff's allegations as is required under Rule 12(b)(6), Defendant Ippolito applies the analysis to his version of the facts. For instance, he asserts that "all the plaintiff alleges that [he] did was participate in an investigation in the workplace, contact the State Police, and testify at trial." (Document No. 26-1 at p. 29). He then argues that Plaintiff's "other allegations related to mental state are plainly irrelevant." Id. However, as discussed above in detail, Plaintiff's allegations are not so limited, and Plaintiff's First Amendment retaliation claim goes to motive in large part and thus Defendant Ippolito's "mental state" may well be highly relevant. Similarly, Defendant Ippolito also takes too narrow a view of Plaintiff's Fourth Amendment illegal search claim. Defendant Ippolito argues that "a reasonable officer would not know they were violating the plaintiff's rights by looking at papers deposited in an open trash can, thrown in a recycle bin or left on a desktop." (Document No. 26-1 at pp. 29-30). However, Plaintiff also alleges that Defendant Ippolito searched "through his desk" and "his private papers." (Document No. 16 at p. 9).

Defendant Ippolito has not, at least at this stage of the case, established an entitlement to qualified immunity. In particular, the second prong of the analysis considers whether a reasonable defendant would have understood that his conduct violated the plaintiff's right which "focuses more concretely on the facts of the particular case." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). However, because Defendant Ippolito has moved to dismiss under Rule 12(b)(6), the only "facts" under consideration are those set forth in Plaintiff's Amended Complaint.

Based on the limited state of the record at this time, there is not sufficient information before the Court about Defendant Ippolito's conduct to assess the second prong of the test. In other words, "whether the state of the law at the time of the alleged violation gave the defendant fair warning that his <u>particular conduct</u> was unconstitutional." <u>Maldonado</u>, 568 F.3d at 269 (<u>citing</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (emphasis added)). Only through discovery will the parties and the Court learn about Defendant Ippolito's "particular conduct," <u>i.e.</u>, what he did or did not do and why. The facts at the center of this case are not yet developed, and those same facts are crucial to the Court's assessment of the objectively reasonable element of the qualified immunity test. Accordingly, based on the limited record, Defendant Ippolito has not established that he is entitled to qualified immunity because his actions were objectively reasonable. For this reason, I recommend that the instant Motion be DENIED as to qualified immunity but without prejudice to Defendant Ippolito renewing his request for qualified immunity on a more fully developed record.

**E.  State Law Claims**

Defendant Ippolito does not substantively address the merits of any of Plaintiff's supplemental state law claims. Instead, he argues that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims because no federal cause of action is left pending. <u>See</u> 28 U.S.C. § 1367(c)(3). However, since I am not recommending the dismissal of all of Plaintiff's federal claims, I also do not recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**Conclusion**

For the foregoing reasons, I recommend that Defendant Ippolito's Motion to Dismiss (Document No. 26) be GRANTED in part as to Plaintiff's constitutional claims under the Fourth

(unlawful arrest), Eighth and Fourteenth Amendments and DENIED in part as to Plaintiff's constitutional claims under the First and Fourth (unlawful search) Amendments. I also recommend that Defendant Ippolito's request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(3) be DENIED. Finally, I recommend that Plaintiff's claims under 42 U.S.C. §§ 1981 and 1985 be DISMISSED as abandoned by Plaintiff as to all Defendants.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 22, 2011